10 CIV 8254

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BLACKBRIAR HOLDINGS, LLC, on behalf of itself and all others similarly situated,

Plaintiff,

-against-

JPMORGAN CHASE & CO., J.P. MORGAN CLEARING CO., J.P. MORGAN SECURITIES INC., J.P. MORGAN FUTURES INC., HSBC HOLDINGS PLC, HSBC SECURITIES (USA) INC., HSBC BANK USA, N.A. and JOHN DOES 1-10,

Defendants.

Docket No.
10 Civ. _______

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**




Plaintiff Blackbriar Holdings, LLC ("Plaintiff"), individually and on behalf of all others similarly situated, by its undersigned attorneys, for its Complaint against the above-named defendants ("Defendants"), upon knowledge as to matters relating to itself and upon information and belief as to all other matters, alleges as follows:

**FACTS UNDERLYING THE ACTION**

1. Defendants (as more fully set forth at ¶¶ 15-23, infra), through diverse means, lawful and unlawful, manipulated and made artificial the prices of silver futures and options on futures contracts (hereinafter sometimes jointly referred to as "Silver Contracts") traded on the Commodity Exchange, Inc. ("COMEX") in this District during the Class Period as defined in ¶ 24, infra.

2. Specifically, Defendants:

a) Caused the price of Silver Contracts traded on COMEX to be artificial by amassing large positions in Silver Contracts and engaging in coordinated trading in order to make the prices of Silver Contracts artificially low;

b) made millions of dollars in illicit profits via trading with the knowledge that Defendants' coordinated activity would depress the prices of Silver Contracts, causing "short" positions to become profitable; and

c) concealed their manipulative trading from regulators and market participants.

3. According to published accounts as well as court filings in other private litigation against Defendants, the CFTC is engaged in an ongoing intensive investigation of unlawful and manipulative trading in Silver Contracts by these Defendants.

4. The CFTC investigation has reportedly been aided by information provided and personal knowledge of a whistleblower, a former employee of Goldman Sachs in that firm's London office (hereafter, the "Whistleblower").

5. In September 2008, the Enforcement Division of the Commodity Futures Trading Commission ("CFTC") commenced an investigation into manipulation in the silver market. The CFTC said in a report that year that it had received "numerous

letters, e-mails and phone calls" alleging that silver futures prices were being unlawfully manipulated downward.

6. In November 2009, the Whistleblower reportedly contacted the CFTC and reported Defendants' illegal conspiracy to manipulate and suppress the prices of COMEX silver futures and options contracts.

7. In his communications with the CFTC, the Whistleblower reportedly described how JPMorgan silver traders signaled market participants in advance of their manipulation, so that they, along with other traders, could reap enormous profits by artificially and unlawfully suppressing and manipulating the price of COMEX Silver Contracts via executed trades as well as orders that were placed but exceeded the available liquidity in the market.

8. In subsequent communications, the Whistleblower reportedly informed the CFTC that he had observed JPMorgan signal the market that it intended, with others, to reduce and suppress the price of COMEX silver futures contracts, including at or around the date in which options (whose value derives from the underlying price of COMEX silver futures contracts) were scheduled to expire ("Options Expiry"). Once they received these signals, Defendant HSBC and other co-conspirators of JPMorgan reportedly flooded the market with orders calculated to depress and make artificially lower the price of Silver Contracts.

9. CFTC Commissioner Bart Chilton stated as follows on October 26, 2010:

> I believe that there have been repeated attempts to influence prices in the silver markets. There have been fraudulent attempts to persuade and deviously control that price. Based on what I have been told by members of the public, and reviewed in publicly available documents, I believe violations to the Commodity Exchange Act (CEA) have taken place in silver markets and that any such violation of the law in this regard should be prosecuted.

10. Defendants' foregoing manipulative conduct caused COMEX Silver Contracts to trade at artificial prices and violated Section 9 of the Commodity Exchange Act, as amended (the "CEA").

11. Defendants' manipulative trading caused traders of Silver Contracts, including Plaintiff, to suffer substantial losses.

12. Plaintiff now brings this class action under the CEA seeking recovery of damages resulting from Defendants' unlawful market manipulation scheme.

**JURISDICTION AND VENUE**

13. (i) Silver is a "commodity" and is the "commodity underlying" COMEX silver futures contracts, as those terms are defined and used in Sections 1a(3) and 22 of the CEA, 7 U.S.C. §§ 1a(3) and 25.

(ii) This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1337 and 7 U.S.C. §§ 1 *et seq*.

(iii) Venue is proper under 28 U.S.C. § 1391(a) and (b) and 7 U.S.C. § 25( c), because Defendants' manipulative course of conduct occurred in large part in this District and caused the prices of Silver Contracts on COMEX, which is located in this District, to be made artificial the Class Period.

**PARTIES**

14. Plaintiff, a limited liability corporation organized and existing under the laws of the State of Delaware, traded Silver Contracts during the Class Period. Plaintiff was damaged by Defendants' manipulation of the price of Silver Contracts to artificial levels.

15. Defendant J.P. Morgan Chase & Co. ("JPM") is a diversified banking, investment banking and brokerage firm that is headquartered at 270 Park Avenue, New York, New York. JPMC maintains (among many other business units) one of the largest futures and options brokerage businesses in the world.

16. Defendant J.P. Morgan Clearing Corp. ("JPMC"), formerly known as Bear, Steams Securities Corp. is a Delaware corporation with its corporate offices in Brooklyn, New York. JPMC is a subsidiary of J.P. Morgan Securities Inc. which is a wholly owned subsidiary, of JPMorgan Chase & Co. JPMC is a registered Futures Commission Merchant with the CFTC.

17. Defendant J.P. Morgan Securities Inc. ("JPMS") is a Delaware corporation with its principal place of business in New York, New York. JPMS is a wholly owned subsidiary of JPMorgan Chase & Co. JPMS, though JPMC, provides securities and futures clearing, customer financing, securities lending and related services.

18. Defendant J.P. Morgan Futures Inc. ("JPMFI") is a Delaware corporation with its principal place of business in New York, New York. JPMFI is a U.S. futures commission merchant and wholly owned subsidiary of JPMorgan Chase & Co. JPMFI provides research, sales, execution and clearing services in futures and options across fixed income, equity, foreign exchange and commodity asset classes. JPMFI holds the U.S. accounts of JPMorgan Chase's global futures and options business customers.

19. Defendant HSBC Holdings PLC ("HSBC Holdings") is a United Kingdom public limited company with its corporate headquarters in London, England.

20. Defendant HSBC Securities (USA) Inc. ("HSBC USA") is a Delaware corporation with a corporate office located in New York, New York. HSBC USA is a wholly owned subsidiary of HSBC Markets (USA) Inc. whose ultimate parent is HSBC Holdings PLC. HSBC USA is a registered broker-dealer of securities under the Securities Exchange Act of 1934 and is a registered Futures Commission Merchant with the CFTC.

21. Defendant HSBC Bank USA, National Association ("HSBC NA') is a Texas company with an office in Wilmington, Delaware.

22. Plaintiff alleges on information and belief that at all relevant times, Defendants John Does 1-10, inclusive, were also engaged in the manipulation of Silver Contracts as alleged herein. Plaintiff is presently unaware of the true names and identities of those Defendants sued herein as John Does 1-10. Any reference made to such Defendants by specific name or otherwise, individually or plural, is also a reference to the actions of John Does 1-10, inclusive.

23. The acts alleged in this Complaint to have been committed by Defendants were authorized, ordered, or done by their officers, agents, employees, or representatives, while actively engaged in the management of each of the Defendants' affairs.

**CLASS ALLEGATIONS**

24. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure ("FRCP"). The Class in this action consists of persons, other than Defendants, their employees, affiliates and co-conspirators, who purchased, sold, held or otherwise transacted in Silver Contracts from the earliest date permitted under the applicable statute of limitations until the present date or any later date

when Defendants' unlawful scheme or its effects shall conclude ("Class Period").

25. COMEX has been designated by the CFTC as a contract market pursuant to Section 5 of the CEA, 7 U.S.C. § 7. COMEX submits to the CFTC for approval various rules and regulations through which the COMEX designs, creates the terms of, and conducts trading in various commodity futures and options on futures contracts, including Silver Contracts.

26. Silver and other futures and options contracts are standardized according to the terms specified by the COMEX or the other contract market/commodity exchange that creates the futures contract. Futures markets, the standardized and fungible futures and options contracts, and the mechanism of the clearing house to hold the other side of every futures and options contract, are specifically designed to facilitate and ease trading in one central marketplace by traders who are located throughout the world.

27. At least hundreds of Silver Contracts were traded on many business days during the Class Period. The number of persons or entities who transacted in Silver Contracts during the Class Period is believed to be in the thousands, and those persons or entities are geographically dispersed.

Therefore, joinder is impracticable pursuant to FRCP Rule 23(a)(1).

28. Common issues of fact or law predominate over individual issues within the meaning of FRCP Rule 23(a)(2).

29. Futures contracts are firm commitments to make or accept delivery of a specified quantity and quality of a commodity during a specific month in the future at a price agreed upon at the time the commitment is made.

30. There are two sides to a silver futures contract traded on a contract market/exchange. The "long" side is the buyer of the contract who is obligated to take delivery and pay for the commodity. The "short" side is the seller of the contract who is obligated to make delivery of the commodity.

31. However, only a small percentage of all silver futures contracts traded each year result in delivery of the underlying commodities. Instead, traders generally offset their futures positions before their contracts mature. For example, a purchaser of a futures contract can cancel or offset his future obligation to the contact market/exchange clearing house to take delivery of silver by selling an offsetting futures contract. The difference between the initial purchase or sale price and the price of the offsetting transaction represents the realized profit or loss.

32. Silver options on futures contracts are likewise similarly standardized, fungible, and traded via a central clearing house, the COMEX.

33. Accordingly, each and every Class member transacted in standardized and fungible Silver Contracts in the same centralized COMEX market and subject to the same COMEX market rules and regulations.

34. In the absence of manipulation, the COMEX market for Silver Contracts was an efficient market and the prices therein reflected available information.

35. Common issues of law and fact include but are not limited to:

(i) whether the manipulative activities alleged herein existed;

(ii) whether such manipulative activities had the result of manipulating prices in the market for COMEX Silver Contracts;

(iii) whether, as a result of any such violation, Defendants caused prices in the COMEX market for Silver Contracts to be artificial during the Class Period;

(iv) if so, to what extent were prices artificial;

(v) whether Defendants' course of conduct violated the CEA; and

(vi) whether a constructive or actual trust should be impressed upon the ill-gotten gains obtained by Defendants as fruits of their misconduct.

36. Plaintiff's interests are typical of, and not antagonistic to the interests of, the Class.

37. Plaintiff has retained competent counsel experienced with class actions and commodities litigation and intends to vigorously prosecute this action.

38. Common issues predominate. A class action is superior to all other methods for the fair and efficient adjudication of this controversy. Indeed, a class action is the only method by which Plaintiff and the Class can efficiently seek redress and obtain a uniform adjudication of their claims. The size of individual damages is small in comparison to the complexity and scope of the Defendants' alleged manipulation and unlawful conduct.

39. (a) Upon acceptance of any transaction of Silver Contracts on COMEX, the COMEX clearinghouse effectively becomes the seller to every buyer of a COMEX Silver Contract and the buyer to every seller. The COMEX clearinghouse's functions include matching and recording trades, collecting and maintaining margins, allocating margins according to the positions of the

clearing members, and matching open short with open long positions.

(b) Class members' identities and their trades generally can be identified by members of the COMEX clearing house and/or the futures brokers clearing through COMEX.

(c) Plaintiff does not anticipate any difficulties in the management of this action as a class action.

**FRAUDULENT CONCEALMENT**

40. By its very nature, the unlawful activity, as alleged herein, that Defendants engaged in was self-concealing. Defendants, inter alia, engaged in secret orchestrated trading to manipulate and make artificial prices for Silver Contracts on COMEX.

41. Plaintiff and members of the Class had no knowledge of the unlawful conduct alleged in this Complaint, or of any facts that could or would have led to the discovery thereof, until partial details concerning the scheme began to become public in 2010.

42. Because the Defendants employed acts and techniques that were calculated to wrongfully conceal the existence of such illegal conduct, Plaintiff and the Class could not have discovered the existence of this unlawful conduct any earlier than its public disclosure in or about October 2010.

43. Due to the fraudulent concealment, any applicable statute of limitations affecting or limiting the rights of action by Plaintiff or members of the Class has been tolled during the period of such fraudulent concealment.

**AS AND FOR A FIRST CAUSE OF ACTION FOR MANIPULATION IN VIOLATION OF THE COMMODITY EXCHANGE ACT, 7 U.S.C. SECTION 1**

44. Plaintiff incorporates by reference and realleges the preceding allegations, as though fully set forth herein

45. Plaintiff transacted in one or more COMEX Silver Contract(s) during the Class Period, and was injured as a result of the Defendants' manipulations of the price of those Silver Contracts, and/or the price of the silver underlying silver futures contracts, in violation of the CEA, 7 U.S.C. § 1 *et seq*.

46. Defendants' trading activities alleged herein constitute manipulation of the price of Silver Contracts, and/or the price of silver underlying silver futures contracts, in violation of Section 9(a) and 22(a) of the CEA, 7 U.S.C. §§ 13(a), 25(a).

47. As set out more fully above, during the Class Period, Defendants engaged in a pattern of manipulative and surreptitious trading that caused the market prices for Silver Contracts to be artificial. Defendants had the ability to influence market prices, intended to influence market prices, and through their

conduct caused artificial prices to exist during the Class Period.

48. Through the activities alleged herein, Defendants perpetrated a fraud on the market in the market for Silver Contracts.

49. By engaging in the foregoing unlawful acts and practices, which were designed to mislead Plaintiff and the Class, Defendants, in or in connection with the purchase and/or sale of Silver Contracts, (i) cheated or defrauded or attempted to cheat or defraud Plaintiff and the Class; (ii) willfully made false reports and statements; and/or (iii) willfully deceived or attempted to deceive Plaintiff and the Class with regard to Plaintiff's and the Class's orders for transactions in Silver Contracts, in violation of Section 4b(a)(i), (ii) and (iii) of the CEA, 7 U.S.C. § 6b(a)(i), (ii), (iii).

50. Defendants entered into transactions involving Silver Contracts, and intentionally undertook these transactions to cause the prices of Silver Contracts to be reported registered or recorded that were not true and bona fide prices, in violation of Section 4c of the CEA, 7 U.S.C. §6c.

51. Plaintiff and the Class are each entitled to actual damages for the violations of the CEA alleged herein.

**AS AND FOR A SECOND CAUSE OF ACTION FOR AIDING AND ABETTING VIOLATIONS OF THE COMMODITY EXCHANGE ACT**

52. Plaintiff incorporates by reference and realleges the preceding allegations, as though fully set forth herein.

53. Defendants knowingly aided, abetted, counseled, induced, and/or procured the violations of the CEA alleged herein. Defendants did so knowing of other Defendants' manipulations of Silver Contract prices, and willfully intended to assist these manipulations to cause the price of Silver Contracts to be artificial during the Class Period, in violation of Section 22(a)(1) of the CEA, 7 U.S.C. § 25(a)(1).

54. Defendants substantially assisted in the aforesaid manipulations while simultaneously being informed of the nature of the manipulative pattern of trading engaged in by Defendants.

55. Plaintiff and the Class are each entitled to actual damages for the violation of the CEA alleged herein.

56. As a further direct and proximate result of the acts of Defendants, plaintiff and the Class have been required to act

in the protection of their interests by filing this action, and have incurred attorneys' fees, and other expenditures in a sum to be proven in trial.

**AS AND FOR A THIRD CAUSE OF ACTION FOR DISGORGEMENT OF UNJUST ENRICHMENT OR IMPOSITION OF A CONSTRUCTIVE TRUST**

57. Plaintiff repeats and realleges each and every allegation of this complaint as if fully set forth herein.

58. As a direct and proximate result of the Defendants' unlawful conduct, Plaintiff and the Class have been damaged and Defendants have been unjustly enriched. Plaintiff and the Class should be compensated from sums disgorged from Defendants. A constructive trust should be imposed on Defendants' unlawfully obtained profits.

**JURY DEMAND**

59. Plaintiff demands a trial by jury.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff demands judgment:

(a) ordering that this action proceed as a class action as to all claims previously alleged;

(b) awarding money damages, including prejudgment interest, on each claim in an amount to be established at trial;

c) awarding statutory attorneys' fees and costs, and other relief;

(d) impressing a trust on the ill-gotten gains of Defendants in the ultimate res of which each Class member shall have an undivided interest;

(e) directing further proceedings to determine the distribution of the trust among Class members, inter se, and award attorneys' fees and expenses to Plaintiff's counsel; and

(f) awarding such other relief as to this Court may seem just and proper.

Dated: New York, New York
November 1, 2010

LAW OFFICE OF
CHRISTOPHER J. GRAY, P.C.

By: ______________________
Christopher J. Gray
460 Park Avenue, 21ST Floor
New York, NY 10022
(212) 838-3221

LOUIS F. BURKE, P.C.

By: ______________________
Louis F. Burke
Leslie Wybiral
460 Park Avenue, 21ST Floor
New York, NY 10022
(212) 682-1700

*Attorneys for Plaintiff*
*Blackbriar Holdings, LLC*